**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| LOGANTREE LP | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. 6:21–cv–00397–ADA |
| APPLE, INC., | |
| *Defendant*. | **JURY DEMAND** |

---

### PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

---

Plaintiff, LoganTree LP ("Plaintiff" or "LoganTree"), submits its Responsive Claim Construction Brief and requests that the Court deny the attempts of Apple, Inc. ("Defendant" or "Apple") to invalidate the asserted Patent claims as "indefinite" or impermissibly narrow the claim terms.

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   LEGAL STANDARD ............................................................................................. 3

III.  ARGUMENT .......................................................................................................... 3

    A.    LoganTree's Withdrawal of Agreed Construction ........................................ 3

    B.    "monitoring movement of body parts" (Claim 1) ......................................... 5

    C.    "movement sensor" (claims 1, 63, 64, 65) ................................................... 6

    D.    "unrestrained movement in any direction" (Claims 1 and 20) ..................... 8

    E.    "signals indicative of said movement" (Claim 1) ....................................... 13

    F.    "detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data" (Claims 1 and 20)    14

    G.    "event" (Claims 1, 20, 31, 32, 36, 40, 61, 141) ......................................... 17

    H.    "velocity" (Claims 1 and 20) ..................................................................... 19

IV.   CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*3M Innovative Props. Co. v. Tredegar Corp.*,
  725 F.3d 1315, 1325–26 (Fed. Cir. 2013) ....................................................... 15, 16

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
  811 F.3d 1334, 1345 (Fed. Cir. 2016) ...................................................... 9

*Amgen Inc. v. F. Hoffman–LA Roche Ltd.*,
  580 F.3d 1340, 1371 (Fed. Cir. 2009) ...................................................... 13

*Ancora Techs. v. Apple, Inc.*,
  744 F.3d 732, 734 (Fed. Cir. 2014) .......................................................... 13

*Arunachalam v. Exxon Mobil Corp.*,
  6:19–CV–00171–ADA, 2019 WL 10303695, at *2 (W.D. Tex. June 26, 2019). .................... 5

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
  359 F.3d 1367, 1371 (Fed. Cir. 2004) ...................................................... 9

*BASF Corp. v. Johnson Matthey Inc.*,
  875 F.3d 1360, 1365 (Fed. Cir. 2017) ...................................................... 8

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950–51 (Fed. Cir. 2006). ........................ 14

*Biomedino, LLC v. Waters Techs. Corp.*,
  490 F.3d 946, 949 (Fed. Cir. 2007) .......................................................... 13

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*,
  838 F.3d 1224, 1228 (Fed. Cir. 2016) ...................................................... 9

*CSB–Sys. Int'l Inc. v. SAP America, Inc.*,
  Civil Action No. 10-2156, 2011 WL 3240838, at *17 (E.D. Pa. July 28, 2011) .................... 13

*Cybor Corp. v. FAS Technologies, Inc.*,
  138 F.3d 1448, 1476 (Fed. Cir. 1998) ...................................................... 4

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*,
  946 F.3d 1367, 1381 (Fed. Cir. 2020) ...................................................... 15

*Eng'd Arresting Sys. Corp. v. Runway Safe LLC*,
  Cause No. 1:15–CV–546–LY, 2016 WL 5107083, at *5–6 (W.D. Tex. Sept. 19, 2016) ....... 15

*Estech Sys., Inc. v. Target Corp.*,
  Case No. 2:20–cv–00123–JRG–RSP, 2021 WL 1090747, at *6, 9–10 (E.D. Tex. March 21,
  2021) ......................................................................................... 15

*Gree, Inc. v. Supercell Oy*,
  Case No. 2:20–cv–00113 JRG–RSP, 2021 WL 963407, at *9–10 (E.D. Tex. March 15, 2021)
  ............................................................................................. 18

*Hill–Rom Svs., Inc. v. Stryker Corp.*,
    755 F.3d 1367, 1371–72 (Fed. Cir. 2014) ......................................................... 15, 17

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
    381 F.3d 1352, 1355 (Fed. Cir. 2004) .................................................................... 3

*Homeland Housewares, LLC v. Whirlpool Corp.*,
    865 F.3d 1372, 1374–75 (Fed. Cir. 2017) ............................................................. 3

*IGT v. Bally Gaming Intern., Inc.*,
    659 F.3d 1109, 1118–19 (Fed. Cir. 2011) ............................................................ 18

*In re Miller*,
    441 F.2d 689 (CCPA 1971). .................................................................................. 12

*Infinity Computer Prod., Inc. v. Oki Data Americas, Inc.*,
    987 F.3d 1053, 1059–60 (Fed. Cir. 2021) ............................................................ 11

*Int'l Dev. LLC v. Richmond*,
    No. CIV.A. 09–2495, 2010 WL 4703779, at *7 (D.N.J. Nov. 12, 2010) ................ 13

*Junker v. Med. Components, Inc.*,
    No. CV 13–4606, 2017 WL 4922291, at *2 (E.D. Pa. Oct. 31, 2017) ................... 13

*KCJ Corp. v. Kinetic Concepts, Inc.*,
    223 F.3d 1351, 1356 (Fed. Cir. 2000) .................................................................... 8

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*,
    147 F.Supp.2d 464, 470 (W.D. Va. 2001) .............................................................. 4

*Linear Tech. Corp. v. Int'l Trade Com'n*,
    566 F.3d 1049, 1059–60 (Fed. Cir. 2009) ............................................................ 15

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370, 390 (1996).......................................................................................... 4

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967, 979 (Fed. Cir. 1995) (in banc) ......................................................... 4

*McCarty v. Lehigh Val. R.R. Co.*,
    160 U.S. 110, 116 (1895)................................................................................. 5, 17

*Microsoft Corp. v. I4I Ltd. P'ship*,
    564 U.S. 91, 97 (2011) ............................................................................................ 9

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898, 901 (2014).............................................................................. 8, 9, 11

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314, 1323 (Fed. Cir. 2003) .................................................................... 5

*Optis Cellular Tech., LLC v. Kyocern Grp.*,
    2:16–cv–0059–JRG–RSP, 2017 WL 541298, at *21–22 (E.D. Tex. Feb. 9, 2017) .......... 18, 20

*Phillips v. AWH Corp.*,
    415 F.3d 1303, 1312–13 (Fed. Cir. 2005); ........................................................... 3, 5, 17, 19

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
  378 F.3d 1396, 1410 (Fed. Cir. 2004) ................................................................ 14

*R.F. Delaware, Inc. v. Pacific Keystone Technologies, Inc.*,
  326 F.3d 1255 (Fed. Cir. 2003) ......................................................................... 4

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
  753 F.3d 1291, 1299 (Fed. Cir. 2014) ........................................................... 5, 17

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335, 1341 (Fed. Cir. 2015) ........................................................... 9, 11

*Thorner v. Sony Comput. Entm't Am. LLC*,
  669 F.3d 1362, 1365 (Fed. Cir. 2012) ............................................................. 3

*Vehicle IP, LLC v. AT & T Mobility, LLC*,
  594 F. App'x 636, 642 (Fed. Cir. 2014) ........................................................... 6

**Statutes**

35 U.S.C. § 282(a) .................................................................................... 13

## <u>TABLE OF EXHIBITS</u>

| Exhibit | Description |
|---|---|
| Exhibit A | United States Patent No. 6,059,576 |
| Exhibit B | Reexamination Certificate for United States Patent No. 6,059,576 |
| Exhibit C | '576 Patent, Original Prosecution File History, Amendment & Response dated May 4, 1999, initialed by Examiner, filed in |

## I.  <u>INTRODUCTION</u>

1.      LoganTree agrees with Apple that Theodore Brann, the inventor, was granted patent rights by the U.S. Patent and Trademark Office issued as U.S. Patent No. 6,059,576 ("the '576 Patent") which was later assigned to LoganTree, and the '576 Patent was filed November 21, 1997. LoganTree further agrees that the '576 Patent was granted for a term of 20 years and has now expired. However, the expiration of the '576 Patent bears no relevance to Apple's infringement of the patent within the six year statutory bar before the '576 Patent expired. More importantly, the expiration of the '576 Patent is not relevant at all with respect to the claim construction of terms of the accused claims. Furthermore, Apple sets forth a description of LoganTree's infringement contentions as somehow being relevant to the Markman process. However, claim construction is provided by the Court as a matter of law based on the claim language and the intrinsic evidence.

2.      Throughout its opening brief, Apple narrowly focuses on a single embodiment of the '576 Patent and ignores the plain and ordinary meaning of the disputed claim terms, in favor of constructions that invite this Court to violate well–settled and controlling principles.

3.      Contrary to Apple's narrow depiction, the '576 patent is directed to a portable, self-contained device for monitoring movement of body parts during physical activity. **Ex. A** at 2:6–9. The device includes a movement sensor for measuring data associated with unrestrained movement in any direction and generating signals indicative of the movement. *Id*. at 4:37–48. The movement sensor is electronically connected to a microprocessor which receives the signals generated by the movement sensor for analysis and subsequent processing. *Id.* at 4:52–55. The microprocessor is connected to a real-time clock to provide date and time information to the microprocessor. *Id.* at 5:35–37. In the '576 patent, user-programmable configuration can be

entered by a user, and the user-programmed operation parameters are uploaded to the microprocessor for use by the microprocessor. *Id.* at 5:59–6:9, 7:6–11.

4.    Using the microprocessor, the '576 patent interprets the physical movement data measured by the sensor using the user–programmed operation parameters and the real-time clock. *Id.* at 5:40–47. The '576 patent stores the physical movement data in a memory. *Id.* at 5:57–59. The microprocessor detects a user-defined event using the physical movement data and the user-programmed operation parameters. *Id.* at 40–47. The microprocessor also stores first event information related to the detected first user–defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred. *Id.*

5.    Figures 2A–2C show different examples of the invention in practice. As one example, Figure 2C is shown below:



FIG. 2C

6.    The device is capable of measuring the distance the wearer walks and how fast he walked. *Id.* at 3:45–47. The '576 Patent also describes the flexible placement and use of the device on many parts of the body including measuring the entire body. *Id.* at 3:59–62.

7.    As explained below, the court should reject Apple's improper constructions and adopt LoganTree's proposed constructions in full.

## II.    LEGAL STANDARD

8.    To briefly summarize claim construction standards, which this Court is intimately familiar with, claim construction is a question of law that "begins and ends in all cases with the actual words of the claim." *See Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1374–75 (Fed. Cir. 2017) (citations omitted).

9.    Claim terms "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005). "There are only two exceptions to this general rule to interpret a claim term or phrase to have its ordinary and customary meaning: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Meeting these two exceptions is an exacting standard. *Id.*; *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) (emphasis added). As shown below, neither of these exacting conditions is present for any of Apple's claim constructions.

## III.    ARGUMENT

10.    As explained below, Apple fails to justify any "special definitions" of the '576 patent's disputed claim terms. This Court should reject Apple's attempt to manufacture non-infringement arguments where there are none.

### A. LoganTree's Withdrawal of Agreed Construction

11.     LoganTree withdraws its agreement to the construction of the phrase "first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred." LoganTree hesitantly agreed to that construction based on a mistaken belief about the applicability of estoppel. Further review of the law confirmed LoganTree's initial belief that it is not held to the construction of another court where the case is still pending and the issue has not been fully litigated.

12.     "Courts need not blindly apply the doctrine of collateral estoppel to a prior *Markman* ruling that construes a patent's scope and claim. The Federal Circuit's review of a lower court's ruling is crucial to providing the public with a uniform and proper patent claim construction." *Kollmorgen Corp. v. Yaskawa Elec. Corp.,* 147 F.Supp.2d 464, 470 (W.D. Va. 2001) (citing *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 390 (1996)). A substantial portion of *post-Markman* claim constructions are reversed at the Federal Circuit. *Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 1476 (Fed. Cir. 1998) (Rader, J. dissenting). Furthermore, claim construction is reviewed *de novo* by the Federal Circuit. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (in banc). Thus, it makes little sense for this court to blindly follow the claim construction of a previous district court.

13.     The law relating to collateral estoppel of the regional circuit in which the District Court sits applies. *R.F. Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255 (Fed. Cir. 2003). The Fifth Circuit applies the following four-factor test: "First, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; Second the issue must have been fully and vigorously litigated in the prior action; Third, the issue must have been necessary to support the judgment in the prior case; Finally there must be no special circumstance that would render preclusion inappropriate or unfair." *Arunachalam v.*

*Exxon Mobil Corp.*, 6:19–CV–00171–ADA, 2019 WL 10303695, at \*2 (W.D. Tex. June 26, 2019). This claim construction has not been fully litigated. LoganTree has not had an opportunity to appeal the issue. Because this four-factor test is not satisfied, estoppel does not apply.

14.     Since LoganTree is not bound to this claim construction, LoganTree proposes that the term be given its plain and ordinary meaning. The currently proposed construction attempts to add limitations to an otherwise understood term. Federal Circuit principles repeatedly reject this practice. Defendants cannot "add language without support from the specification or prosecution history" "instead of looking to the words themselves." *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014); *see also Phillips*, 415 F.3d at 1312; *McCarty v. Lehigh Val. R.R. Co.*, 160 U.S. 110, 116 (1895).

## B. "monitoring movement of body parts" (Claim 1)

| LoganTree's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | Preamble is limiting.<br>"monitoring movement of one or more parts of the body, but not the entire body" |

15.     Apple argues that because the "monitoring movement of body parts" is an essential part of the invention requiring the Court to hold that the preamble requires monitoring movement of body parts, rather than the entire body. In doing so, Apple improperly construes the preamble adding a negative limitation by excluding the entire body. The Court has made clear that claim constructions that exclude a particular element as including a "negative limitation" must find support either in "the words of the claim" or through an "express disclaimer or independent lexicography in the written description that would justify adding that negative limitation." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *see also*

*Vehicle IP, LLC v. AT & T Mobility, LLC*, 594 F. App'x 636, 642 (Fed. Cir. 2014). None of these bases for importing a negative limitation into the claim language is present here.

16.    The addition of the negative limitation "but not the entire body" finds no anchor in the explicit claim language. The express text of the claims, "monitoring movement of body parts," does not prohibit the monitoring movement of the entire body. The claims wording clearly calls for movement of body parts without excluding the entire body. Thus, the negative limitation added by Apple finds no support in the text of the claims.

17.    Neither does the '576 Patent provide express disclaimer or independent lexicography in the written description that would justify adding the negative limitation of excluding the entire body. The '576 Patent describes that the "downloadable, self-contained device can be worn at various positions along the torso or appendages being monitored depending on the specific physical task being performed." **Ex. A** at 2:21–24. The associated text of Figures 2A–2C of the '576 Patent includes descriptions that "[p]lacement of the device 12 on the belt as shown will also permit monitoring of the individual's movement during physical activity." *Id*. at 3:40–42. In one particular application, the '576 Patent merely describes that the "movement sensor is simply attached to the appropriate body part requiring monitoring . . . ." *Id*. at 10:29–31. Nowhere in the foregoing descriptions of the '576 Patent, nor in any other descriptions of the '576 Patent, has the patentee expressly disclaimed or provided independent lexicography excluding measuring movement of the entire body or provided a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.

### C. "movement sensor" (claims 1, 63, 64, 65)

| LoganTree's Proposed Construction | Apple's Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | "one or more sensors capable of detecting movement and measuring movement data associated with the |

| | detected movement" |
|---|---|

18.    Apple provides conclusory arguments that "movement sensor" should be construed to include the following lengthy construction: "one or more sensors capable of detecting movement and measuring movement data associated with the detected movement." Dkt. No. 29 at 6–7. This lengthy construction ignores the context in which "movement sensor" is used while adding limitations that are not in the specific claim itself and are not necessary for one of ordinary skill in the art to understand a term with a common plain and ordinary meaning.

19.    The crux of Apple's construction and the only portion of the proposed construction that Apple argues is the addition of the words "one or more" to describe "movement sensor." *Id.* at 7. Apple argues that the specifications, additional claims, and the prosecutorial history disclose the use of one or more sensors and that is why their construction should be accepted. *Id.* Apple's construction, however, should be rejected as unnecessary and insufficient to overcome the presumption in favor of the plain and ordinary meaning of the term.

20.    First, Apple fails to provide sufficient argument and support to show why the last half of their construction is necessary to construe "movement sensor." *See id.* Apple provides no argument relating to the necessity of adding that terminology to allow a person of ordinary skill in the art and the jury to understand the meaning of the term. Instead, movement sensor does not require any construction or further refining as the plain and ordinary meaning is sufficient. An ordinary jury member can know what a movement sensor does especially in light of the context of the claims, but adding the latter half of Apple's construction would be confusing to an ordinary jury member and improperly limits the plain and ordinary meaning of the term. Apple provides no argument that the Patentee acted as his own lexicographer or disavowed the plain and ordinary meaning of the term.

21.     Second, Apple ignores the context of the use of "movement sensor" in the claims. Claim 1 specifically states "*a* movement sensor." **Ex. B** at 1:28. Apple artfully removed the article "a" from the claim term construction because "a" has a specific meaning in patent claims. The Federal Circuit has repeatedly emphasized that "a" or "an" carries the meaning of "one or more." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000).

22.     Because "movement sensor" is preceded by the article "a," then the entire term automatically means one or more movement sensor. *Id.* Apple's construction completely ignores the use of this article and would render the article to be superfluous and meaningless. When the proposed construction does not change the plain and ordinary meaning of the very terms used in the claims, then construction is not necessary and the plain and ordinary meaning should be applied. Because Apple's construction is superfluous and would add unnecessary language and confusion to a simple term, LoganTree asks the Court to reject Apple's construction.

**D.  "unrestrained movement in any direction" (Claims 1 and 20)**

| LoganTree's Proposed Construction | Apple's Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | Indefinite under 35 U.S.C. § 112, ¶ 2 |

23.     Defendant's attempt to invalidate the '576 Patent through this claim construction proceeding is meritless, and, at best, premature. Under the operative standard, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "Reasonable certainty does not require absolute or mathematical precision." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) (quotation marks omitted). "The definiteness requirement must take into account the inherent limitations of language. 'Some

modicum of uncertainty. . . is the price of ensuring the appropriate incentives for innovation.'" *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015) (quoting *Nautilus*, 572 U.S. at 909). The standard imparted by the Supreme Court "mandates clarity, while recognizing that absolute precision is unattainable." *Id.* at 910.

24.     First, the '576 patent carries a presumption of validity that can only be rebutted by clear and convincing evidence. *See Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004); *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011); *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016). Defendant, as the party alleging indefiniteness, bears this burden of proof to show the patents are indefinite, and thus invalid. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1345 (Fed. Cir. 2016); *see also* 35 U.S.C. § 282(a). Defendant has not met this burden

25.     The phrase "unrestrained movement in any direction," when read in light of the specification and the prosecution history, inform those skilled in the art about the scope of the invention. The specification of the '576 Patent provides support and illustration for the phrase "unrestrained movement in any direction." *See* **Ex. A**, Figures 2A–2C. In each of the example embodiments shown in these figures, the device 12 is shown as providing no restraint on the free movement of the wearer to be measured by the device. In this regard, the downloadable, self-contained device can be worn at various positions along the torso or appendages being monitored depending on the specific physical task being performed. *Id*. at 2:21–24.

26.     The specification of the '576 Patent also provides that the device 12 may include a low G, multi-axis accelerometer, which supports measuring unrestrained movement in any direction. *See* **Ex. A** at 4:48–52. A person of ordinary skill in the art understands the importance

of the sensitivity of accelerometers to the function of a device—specifically, a device that utilizes a low G accelerometer is intended to measure unrestrained movement in any direction.

27.    The prosecution history of the phrase "unrestrained movement in any direction" continues to inform, with reasonable certainty, those skilled in the art about the scope of the invention. For example, in arguing against an anticipation rejection, the application argued:

> The Examiner has rejected claims 1, 2, 4–7, 9–11, 13–17, 21, 23–27 and 29 under Section 102(b) as being anticipated by U.S. Pat. No, 5,052,375 issued to Stark et al. The Examiner states that Stark "broadly discloses the concept of the system and method for monitoring physical movement of the body part." The examiner apparently misunderstand the applicant's invention. Stark described an orthopedic limb immobilization device while applicant's invention is designed to measure an individual's free movement of limb or torso. In particular, Stark's invention is an orthopedic restraining device used to immobilize and rehabilitate injured human limbs by providing controlled resistance to movement of the limb. The device monitors the force exerted by the wearer via the inured limb through stress sensing means. And it is this sensed data which is monitored and recorded by the device. . . Stark does not describe a highly portable device used to measure torso or limb movement along multiple axes, including distance and speed of the movement, without any restraint to the movement as is taught by the applicant's invention."

Ex. C at 3. Moreover, in arguing against an obvious rejection, the application argued as follows:

> The Examiner has rejected claims 3, 22, 28 and 30 under Section 103 as being unpatentable over Stark in view of Pratt. However, this rejection is ill-founded. Pratt, just as with Stark, discloses a device which is a "resisting apparatus" (col. 3, lines 8–9). This is in direct opposition to applicant's device which allows the wearer to move in any desired direction and with any desired speed for purposes of monitoring the wearer's movement. Thus, while both Stark and Pratt disclose devices used to restrain or resist the wearer's movement, applicant's device does not and in fact could not in order for it to be used for its intended purpose. The wearer of the applicant's device is not restrained in any way, and this is critical in order to monitor the wearer's natural motion for analysis, whether while performing physical labor or athletic drills. Furthermore, applicant's invention measures and records a wide variation of movement speeds whereas Pratt simply controls the device resistance in order to maintain constant speed throughout the movement (claim 6). Thus, nothing in these two references integrate to form the unique and nonobvious aspects claimed in claims 3, 22, 28 and 30.

Ex. C at 3–4. The foregoing makes clear that the movement to be measured is unrestrained.

28.    Apple constructs a misleading argument that the claims of the '576 Patent are now indefinite because LoganTree's allegedly "advanced conflicting definitions" of the term "unrestrained movement". Dkt. No. 29 at 11. This argument is unsubstantiated because LoganTree's arguments have never contradicted its consistent definition and use of the phrase.

29.    First, a patent is indefinite only if its claims, read in light of the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus*, 572 U.S. at 901. While "[i]ndefiniteness may result from inconsistent prosecution history statements," LoganTree has never taken conflicting positions regarding the scope or definition of the disputed terms that would "leave an uncertainty that, if unresolved, would produce indefiniteness." *See, e.g., Infinity Computer Prod., Inc. v. Oki Data Americas, Inc.*, 987 F.3d 1053, 1059–60 (Fed. Cir. 2021); *Teva*, 789 F.3d at 1345.

30.    Apple's attempt to suggest that LoganTree's arguments interpreting and distinguishing prior art patents and their teachings are analogous to explicitly conflicting positions taken by patent holders is deceptive and not supported by the law. *See Infinity Computer*, 987 F.3d at 1059–60; *Teva*, 789 F.3d at 1345. LoganTree's usage and position that the claims require that the movement measured be unrestrained during the prosecution history have remained consistent. In this regard, LoganTree's statement that "[a]ny such movement measured here is believed to be restrained" with respect to the Helmet system disclosed in U.S. Patent No. 5,978,972 to Stewart ("Stewart") in the *Inter Partes* Review proceedings is submitted to be consistent with LoganTree's positions regarding previously argued prior art.

31.    The Stewart prior art reference discloses a helmet-based system which is typically worn while playing a sport such as boxing or football, and to the method of recording and storing data relating to translational and angular accelerations of a person's head due to impact forces

acting thereon. Dkt. No. 29-9 at 1:24–28. Stewart's disclosure is ripe with support that would inform a person of ordinary skill in the art that the Helmet structure is configured to measure movement where the movement being measured is restrained. *See id.* at 1:24–28 (the invention "relates to a helmet-based system. . . storing data relating to translational and angular accelerations of the person's head due to <u>impact forces acting thereon</u>"); *see also* 10:44–59 ("The HAT device is easily capable of measuring blows in excess of <u>80 to 100 G's</u> in less than 0.1 second. . ."); 4:20–25; 14:4–14.

32.     Furthermore, a person of ordinary skill of the art would be able to resolve any purported uncertainty to understand the claims to be consistent and definite. Specifically, a person of ordinary skill in the art is able to appreciate the importance of an accelerometers sensitivity to the intended and actual function of the device. Low G accelerometers, like the accelerometer contemplated by the '576 patent, are extremely sensitive and thus, measure unrestrained movement in any direction. Conversely, high G accelerometers, like the one disclosed in Stewart, are intended to measure limited movement. While the Stewart device does not restrain motion through its physical structure, like in Stark, the accelerometers necessarily restrain motion measured because it is only intended to detect impact force. Contrary to Apple's suggestion, the Stewart device is not capable of measuring unrestrained movement in any direction, and a person of ordinary skill in the art would recognize this structured intention to measure restrained movement from Stewart's teachings.

33.     Defendant has clearly fallen short of their burden to show that the disputed phrase is indefinite, nevertheless, LoganTree urges the Court to engage in the indefiniteness inquiry at a later more appropriate stage of the litigation. "A determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112 is a legal conclusion that is drawn

from the court's performance of its duty as the construer of patent claims." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007); *accord Amgen Inc. v. F. Hoffman–LA Roche Ltd.*, 580 F.3d 1340, 1371 (Fed. Cir. 2009). Yet district courts throughout the country have generally been reluctant to consider whether a patent is indefinite at the claim construction phase, rather than at the summary judgment phase. *See, e.g., Junker v. Med. Components, Inc.,* No. CV 13–4606, 2017 WL 4922291, at *2 (E.D. Pa. Oct. 31, 2017): *CSB–Sys. Int'l Inc. v. SAP America, Inc.,* No. 10-2156, 2011 WL 3240838, at *17 (E.D. Pa. July 28, 2011); *see also Int'l Dev. LLC v. Richmond*, No. CIV.A. 09–2495, 2010 WL 4703779, at *7 (D.N.J. Nov. 12, 2010).

34.    In the present case, given the aforementioned jurisprudence, the current alleged issue of indefiniteness is unsubstantiated and premature at such an early stage of the litigation.

### E. "signals indicative of said movement" (Claim 1)

| LoganTree's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | "information different from, but corresponding to, data associated with unrestrained movement" |

35.    Apple attempts to narrow this phrase by proposing a construction it suggests "comports" with the plain language of the claim. The plain and ordinary meaning of the claim is clear and a construction "comporting" with the plain language is both unnecessary and inappropriate.

36.    "A claim term should be given its ordinary meanings in the pertinent context, unless the patentee has made clear its adoption of a different definition to otherwise disclaim that meaning." *Ancora Techs. v. Apple, Inc.*, 744 F.3d 732, 734 (Fed. Cir. 2014).

37.    Here, Claim 1 claims "a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement." **Ex. B** at 1:28–30. LoganTree disagrees that the plain and ordinary meaning of these

claims require clarification or would cause "jury confusion". The claim limitation is clear on its face, and adopting Apple's construction convolutes the limitation and would be confusing to a jury. Further, the patentee has not made an adoption of a different definition in the specification that "otherwise disclaim[s] that meaning".

38.    Apple argues that any inapposite construction than that suggested would render superfluous and strip all meaning from the requirement that the movement sensor generate "signals indicative of said movement." It is true that "interpretations that render some portion of the claim language superfluous are disfavored." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004). However, LoganTree has not interpreted the claim limitation in any way that renders portions of the claim superfluous. Nevertheless, the preference for giving meaning to all terms, however, is not an inflexible rule that supersedes all other principles of claim construction. *See Power Mosfet*, 378 F.3d at 1410.

39.    In making its arguments, Apple cites to *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950–51 (Fed. Cir. 2006). However, *Bicon* is factually distinguishable from the instant case. In *Bicon*, the patentee argues for a claim construction that ignored complete portions of the claims. *See id.* at 950. In contrast, LoganTree is not providing any claim construction that ignores claim limitations, where in such a case LoganTree agrees would make the ignored claim limitations superfluous.

40.    The plain and ordinary meaning of the claims are clear, and Apple should be stopped in its attempt to redefine the phrase.

**F.  "detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data" (Claims 1 and 20)**

| LoganTree's Proposed Construction | Apple's Proposed Construction |
| --- | --- |

| Plain and Ordinary Meaning | "detecting a first user-defined event [as construed] based only on the movement data and at least one of the user-defined operational parameters regarding the movement data" |
| --- | --- |

41.     Apple argues that LoganTree expressly disavowed the plain and ordinary meaning of the above claim language in its statements to the Patent Office during reexamination. Dkt. No. 29 at 14–16. Specifically, Apple seeks to add a negative limitation to the claim language by including the term "only." *Id.* However, Apple fails to show that LoganTree's limited statements during reexamination constitute an express and clear disavowal of the plain and ordinary meaning to arise to the level of adding the negative limitation of "only."

42.     The addition of negative limitations to claim terms is highly discouraged and should only be added when the intrinsic evidence expressly shows that the Patentee intended for that limitation. *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1381 (Fed. Cir. 2020) (concurring); *Linear Tech. Corp. v. Int'l Trade Com'n*, 566 F.3d 1049, 1059–60 (Fed. Cir. 2009); *Eng'd Arresting Sys. Corp. v. Runway Safe LLC*, Cause No. 1:15–CV–546–LY, 2016 WL 5107083, at *5–6 (W.D. Tex. Sept. 19, 2016).

43.     "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *Estech Sys., Inc. v. Target Corp.*, Case No. 2:20–cv–00123–JRG–RSP, 2021 WL 1090747, at *6, 9–10 (E.D. Tex. March 21, 2021); *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325–26 (Fed. Cir. 2013); *see also Hill–Rom Svs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371–72 (Fed. Cir. 2014).

44.     Apple does not point to any express disavowal or exclusion language in the '576 Patent itself. *See* Dkt. No. 29 at 14–16. In fact, Apple does not point to any time in the prosecution history or in the '576 Patent itself where the Patentee expressly and manifestly stated that the device **only** detects an event based on the movement data and at least one user-defined

parameter. *See id.* Instead, Apple only argues that the Patentee disclaimed the claim's broad scope when the Patentee distinguished prior art during the reexamination process. *Id.*

45.     However, when examining the context of the Patent and the statements before the Patent Board, Apple's argument fails to show that the Patentee expressly disavowed or expressly changed the plain and ordinary meaning of this claim term. In reference to the prior art raised by Apple, the Patent Office noted that the prior art was defining user events through the use of manual inputs such as pushing the start and stop button at the beginning and end of a ski run. *Id.* at 15. Unlike Apple's argument, the Patentee merely distinguished the invention from the prior art by showing that the microprocessor itself is detecting the events and doing the detecting unlike the prior art which was relying on manual inputs. *Id.* Nowhere does the Patentee ever say that the device detects user-defined events "only" based on the movement data and at least one of the user-defined operational parameters.

46.     Distinguishing the prior art, does not arise to the level of constituting a disavowal of the claim scope or redefining the claim term. It especially does not arise to the level of including a negative limitation such as "only." *See 3M Innovative*, 725 F.3d at 1325–26. In fact, the statements made during reexamination are open to several reasonable interpretations including the interpretation that the Patentee was merely distinguishing the manual inputs from the prior art to the fact that the microprocessor is doing the detection. *See id.*. Nowhere in those statements, the rest of the prosecution history, or in the Patent itself does the Patentee ever say that the detection is limited to those two data inputs.

47.     Furthermore, Apple is attempting to add a limitation to an otherwise understood term. Federal Circuit principles repeatedly reject this practice. Defendants cannot "add language without support from the specification or prosecution history, altering otherwise unambiguous

claim language" "instead of looking to the words themselves." *Source Vagabond*, 753 F.3d at 1299; *see also Phillips*, 415 F.3d at 1312; *McCarty*, 160 U.S. at 116.

48.      Apple's construction is far more limited and does not arise to the level to meet an exception to applying the term's plain and ordinary meaning. Thus, Apple's construction should be rejected.

### G. "event" (Claims 1, 20, 31, 32, 36, 40, 61, 141)

| LoganTree's Proposed Construction | Apple's Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | "movement which surpasses any identified angle limit of movement (based on the specific physical task being accomplished and the range of motion needed to execute the task properly)" |

49.      Apple argues that the Patentee acted as its own lexicographer and defined "event" to mean "movement which surpasses any identified angle limit of movement (based on the specific physical task being accomplished and the range of motion needed to execute the task properly)." Dkt. No. 29 at 16–18. Once again, Apple improperly seeks to add exclusionary limitations to the claim term while ignoring and excluding a plethora of specifications and statements in the '576 Patent itself. Apple's construction does not arise to the exacting standards to overcome the plain and ordinary meaning of "event."

50.      To show that a patentee sought to act as its own lexicographer, the moving party must meet an exacting standard to show that the patentee exclusively and unmistakably set forth a claim term other than its plain and ordinary meaning. *Hill–Rom Sys.*, 755 F.3d at 1371–72. Even in cases where the patent describes only a single embodiment that meets the proposed construction, the court is not to read the claims restrictively "unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Id.*; *see also Gree, Inc. v. Supercell Oy*, Case No. 2:20–cv–00113 JRG–

RSP, 2021 WL 963407, at *9–10 (E.D. Tex. March 15, 2021) Further, a construction that excludes embodiments and specifications is rarely correct. *Optis Cellular Tech., LLC v. Kyocern Grp.*, 2:16–cv–0059–JRG–RSP, 2017 WL 541298, at *21–22 (E.D. Tex. Feb. 9, 2017).

51.     Apple's argument improperly seeks to limit "event" to a specific embodiment to the exclusion of other embodiments and the claim language itself. Apple correctly noted that the specification expressly notes that the "device monitors a wide variety of 'events' and records each event with a date/time stamp. Many different types of 'events' may be defined to be monitored by the device." **Ex. A** at 6:19–22.

52.     The very specification cited to by Apple denotes that this specification is merely an example and not the Patentee acting as a lexicographer. For example, the last phrase of the sentence states that this "is a ***standard*** recordable event." **Ex. A.** at 6:26 (emphasis added). "Standard" is a term that is used to show what an example or common event is. Nothing in this language shows that this is the **only** definition of "event."

53.     Apple's arguments and construction do not arise to the exacting standard to overcome the plain and ordinary meaning of the term "event." Further, "event" in connection with its adjectives is a common term that courts routinely give its plain and ordinary meaning. *See e.g. Gree, Inc.*, 2021 WL 963407, at *9–10; *Optis Cellular Tech.*, 2017 WL 541298, at *21–22; *IGT v. Bally Gaming Intern., Inc.*, 659 F.3d 1109, 1118–19 (Fed. Cir. 2011).

54.     Furthermore, dependent Claim 143 recites, "The device of claim 1, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects time stamp information reflects a time at which the movement exceeded the first user-defined angle limit." **Ex. B** at 9:54–58. "The presence of a dependent

claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315.

55.     Therefore, because Apple fails to show that the Patentee expressly acted as its own lexicographer, the Court should deny Apple's construction and construe "event" to have its plain and ordinary meaning.

### H. "velocity" (Claims 1 and 20)

| LoganTree's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | "angular velocity" |

56.     Apple argues that the claim and the specifications state that "velocity" ***only*** means "angular velocity" based on its close use to the terms "angle" and the specific instances of the use of "angular velocity." Dkt. No. 29 at 19–20. Yet, "velocity" is a common term that is readily understood by one of ordinary skill in the art to include both linear and angular velocity.

57.     Additionally, the claim itself states that the movement measures both "angle and velocity." **Ex. B** at 1:49–50. Apple argues that the combination of those two terms makes "velocity" only mean "angular velocity." Dkt. No. 29 at 19. However, nowhere in the Patent does the Patentee ever exclusively limit velocity to angular velocity.

58.     Importantly, Apple correctly points out that other areas of the Patent specifically use the term "angular velocity." Dkt. No. 29 at 20. Under common canon's of construction, the Patentee's use of "angular velocity" in one area of the Patent means "angular velocity" but the use of the general term for "velocity" encompasses the broader term of both linear and angular velocity otherwise the Patentee would have used the term "angular velocity" in the claims.

59.     Furthermore, the specification states that the movement sensor not only measures "angles" but also measures "speed and distance" and how far and fast an individual walks. **Ex. A**

at 4:39–40; 3:45–47. Speed and distance indicate linear velocity. As admitted by Apple in its brief, linear velocity specifically includes measuring distance. Dkt. No. 29 at 20. Therefore, the claims themselves expressly contradict Apple's proposed construction and further support the plain and ordinary meaning of the term as proposed by LoganTree.

60.     Apple has shown no grounds to meet the exacting standard for finding that the Patentee acted as its own lexicographer or disavowed the broad scope of the claim. Instead, LoganTree's construction of "velocity" to include both linear and angular velocity gives effect to each aspect of the claims and specifications of the Patent. Therefore, the Court should accept LoganTree's construction.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, LoganTree respectfully requests that the Court reject Apple's proposed claim constructions and adopt its proposed claim constructions.


DATED: December 17, 2021                      Respectfully submitted by:

                                              **MCCATHERN, SHOKOUHI, EVANS,
                                              GRINKE PLLC**

                                              */s/Arnold Shokouhi*
                                              Arnold Shokouhi
                                              Texas Bar No. 24056315
                                              arnolds@mccathernlaw.com
                                              Christopher M. Barkley
                                              *Pro Hac Vice* pending
                                              cbarkley@mccathernlaw.com
                                              James E. Sherry
                                              Texas Bar No. 24086340
                                              jsherry@mccathernlaw.com
                                              3710 Rawlins Street, Suite 1600
                                              Dallas, TX 75219
                                              Phone: (214) 443–4478
                                              Facsimile: (214) 741–4717
                                              **PLAINTIFF'S COUNSEL**

# EXHIBIT A

US006059576A

# United States Patent [19]

## Brann

| [11] | Patent Number: | **6,059,576** |
|---|---|---|
| [45] | **Date of Patent:** | *May 9, 2000 |

[54] **TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY**

[76] Inventor: **Theodore L. Brann**, P.O. Box 1897, Mission, Tex. 78572

[ * ] Notice: This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2).

[21] Appl. No.: **08/976,228**

[22] Filed: **Nov. 21, 1997**

[51] **Int. Cl.$^7$** ............................. **A63B 69/00**; G09B 9/00

[52] **U.S. Cl.** .......................... **434/247**; 128/782; 600/595; 601/34; 482/8; 482/901; 340/686.1; 702/101

[58] **Field of Search** .................................... 434/118, 247, 434/365; 482/3, 4, 6, 8, 9, 92, 137, 900–903; 128/897, 905, 782; 600/301, 502, 587, 594, 595; 601/5, 33, 34; 73/379.01, 379.06, 379.08; 340/573.1, 573.7, 686.1, 689; 364/167.12; 702/19, 41, 101, 141, 174

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,571,682 | 2/1986 | Silverman et al. | ................ 482/903 X |
| 4,665,928 | 5/1987 | Linial et al. . | |
| 4,911,427 | 3/1990 | Matsumoto et al. | ................ 482/902 X |
| 4,912,638 | 3/1990 | Pratt, jr. | ............................ 482/903 X |
| 4,934,694 | 6/1990 | McIntosh | ........................... 482/902 X |
| 5,042,505 | 8/1991 | Mayer et al. . | |
| 5,052,375 | 10/1991 | Stark et al. | ......................... 482/902 X |
| 5,128,655 | 7/1992 | Shore . | |
| 5,348,519 | 9/1994 | Prince et al. | ........................ 482/903 X |
| 5,373,858 | 12/1994 | Rose et al. . | |
| 5,375,610 | 12/1994 | LaCourse et al. . | |
| 5,394,888 | 3/1995 | Stone et al. . | |
| 5,398,697 | 3/1995 | Spielman . | |
| 5,435,321 | 7/1995 | McMillen et al. . | |
| 5,462,065 | 10/1995 | Cusimano . | |
| 5,469,862 | 11/1995 | Kovacevic . | |
| 5,474,088 | 12/1995 | Zaharkin et al. . | |
| 5,513,651 | 5/1996 | Cusimano et al. . | |
| 5,588,444 | 12/1996 | Petragallo . | |
| 5,621,667 | 4/1997 | Waters . | |
| 5,715,160 | 2/1998 | Plotke | ................................. 482/902 X |

*Primary Examiner*—Joe H. Cheng
*Attorney, Agent, or Firm*—Locke Liddell & Sapp LLP

[57] **ABSTRACT**

An electronic device, system and method to monitor and train an individual on proper motion during physical movement. The system employs an electronic device which tracks and monitors an individual's motion through the use of an accelerometer capable of measuring parameters associated with the individual's movement. The device also employs a user-programmable microprocessor which receives, interprets, stores and responds to data relating to the movement parameters based on customizable operation parameters, a real-time clock connected to the microprocessor, memory for storing the movement data, a power source, a port for downloading the data from the device to other computation or storage devices contained within the system, and various input and output components. The downloadable, self-contained device can be worn at various positions along the torso or appendages being monitored depending on the specific physical task being performed. The device also detects the speed of movements made while the device is being worn. When a pre-programmed recordable event is recognized, the device records the time and date of the occurrence while providing feedback to the wearer via visual, audible and/or tactile warnings.

**29 Claims, 9 Drawing Sheets**











FIG.  1



FIG. 2A



FIG. 2B



FIG. 2C

Case 3:22-cv-02892-TLT    Document 30    Filed 12/17/21    Page 32 of 58



FIG. 3



FIG. 4



FIG. 5A

| FIG. 5 LEGEND | |
|---|---|
| FIG. 5A | FIG. 5B |
| FIG. 5C | FIG. 5D |



FIG. 5B



FIG. 5C



FIG. 5D

6,059,576

**1**

# TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY

## FIELD OF THE INVENTION

This invention relates to the field of electronic training and safety devices used to monitor human physical activity. More specifically, the invention detects, measures, records, and/or analyzes the time, date, and other data associated with movement of the device and produces meaningful feedback regarding the measured movement.

## BACKGROUND

It has long been known that improper physical movement, especially when repeated, can result in injury to a person. This injury may manifest itself in a wide range of symptoms anywhere from sore or bruised muscles to chronic, debilitating loss of movement. In order to study and better understand safe human movement which does not result in injury, a variety of sensing, monitoring, and notification devices have been created. In general, these devices fall under the general category of range of motion (ROM) detectors.

Several such inventions have been patented to measure the range of motion of various joints of the human body for both medical studies and industry applications. Typically, these inventions require that two people simultaneously use the device: the patient/wearer and the operator of the device. The purpose of these devices is to quantitatively determine a range of motion of a human joint in angular degrees as exemplified by U.S. Pat. Nos. 4,665,928; 5,042,505; and 5,373,858. Although the devices disclosed in these patents serve the purposes for which they are intended, they do not warn the device wearer when the wearer is nearing, or has reached, a potentially dangerous angle of movement.

Another class of ROM devices has attempted to provide a warning to the wearer through an audible alarm or flashing light. Typically, these devices activate the alarm when a predetermined angle of flexion or extension has been exceeded in order to try and reduce the number of injuries that can occur as a result of the improper movement. Because of the general weakness of the human spine and back muscles, most of these devices are geared toward detecting improper torso movement while lifting an object. One such invention described in U.S. Pat. No. 5,128,655 uses a mercury switch set at a predetermined angle to trigger a counting mechanism in order to count the number of times the predetermined angle is exceeded during forward bending. Another such device described in U.S. Pat. No. 5,398,697 uses a "T" shaped collimated light beam to detect both forward and lateral bending of the spine. However, these devices are not convenient to operate and serve to merely report rather than analyze the information detected.

Training an individual to make proper movements requires more than just counting the number of times a predetermined angle is surpassed and warning the wearer of the incorrect movement. In order to prevent incorrect movement in hopes of reducing injuries, lost man hours, and workmen's compensation claims, a device must not only be able to record the frequency of improper movements, but also monitor the angular velocity and general tendencies of the wearer with regard to the unsafe movement habits. The angular velocity of any physical action affects the stretching and tautness of the muscle involved in the motion. Thus, information on angular velocity is important to monitoring and analyzing improper movement. Finally, the wearer must

**2**

also be informed about the tendencies he has regarding his performance of a specific task. In particular, it is helpful to know whether improper movements occur more often in the morning or afternoon.

## SUMMARY OF THE INVENTION

According to the present invention, the foregoing and other objects and advantages are attained by a system which may be used to monitor and train a wearer during physical movement. The system employs an electronic device which tracks and monitors an individual's motion through the use of a movement sensor capable of measuring data associated with the wearer's movement. The device also employs a user-programmable microprocessor which receives, interprets, stores and responds to the movement data based on customizable operation parameters, a clock connected to the microprocessor, memory for storing the movement and analysis data, a power source, a port for downloading the data from the device to other computation or storage devices contained within the system, and various input and output components. The downloadable, self-contained device can be worn at various positions along the torso or appendages being monitored depending on the specific physical task being performed. The device also monitors the speed of the movements made while the device is being worn. When a pre-programmed recordable event is recognized, the device records the time and date of the occurrence while providing feedback to the wearer via visual, audible and/or tactile warnings. Periodically, data from the device may be downloaded into an associated computer program which analyzes the data. The program can then format various reports to aid in recognizing and correcting trends in incorrect physical movement.

It is, therefore, an object of this invention to provide a user programmable training and safety device designed to observe and record the direction and frequency of physical movement of the wearer.

It is another object of this invention to provide a system which monitors, records and analyzes the time, date, angle of movement, and angular velocity of physical movement for subsequent interpretation.

It is still another object of this invention to monitor bi-directional movement of the torso about the spine during a lifting movement.

It is yet another object of this invention to detect and monitor a series of angles of movement and to visually and audibly warn the wearer as each angle limit is exceeded during physical movement.

It is yet another object of this invention to provide a device to assist in training an individual in proper posture while executing an identified physical activity.

To achieve these and other objects which will become readily apparent upon a reading of the attached disclosure and appended claims, an improved training and safety device is provided. Additional objects, advantages, and novel features of the invention will be set forth in part in the description which follows, and in part will become apparent to those skilled in the art upon examination of the following, or may be learned by practice of the invention. The objects and advantages of the invention may be realized and attained by means of the instrumentalities and combinations particularly pointed out in the appended claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a plan view of the system of the present invention, including the movement measuring device, the download device, and the computer.

6,059,576

3

FIG. 2A is a plan view of a wearer showing a possible location for the movement measuring device in operation.

FIG. 2B is a plan view of a wearer showing another location for the device during operation.

FIG. 2C is a plan view of a wearer showing the location of an alternative embodiment of the device of the present invention.

FIG. 3 is a perspective view of another alternative embodiment of the self-contained movement measuring device of the present invention.

FIG. 4 is a block diagram of the movement measuring device of the present invention.

FIG. 5 is a flowchart of the steps performed by the microprocessor in operating the movement measuring device.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Reference is now made to FIG. 1 for a description of a preferred embodiment of the system **10** of the current invention. FIG. **1** shows the movement measuring device **12** positioned above a download device **14** connected to a computer **16**. The movement measuring device **12** is designed to be physically attached to a user whose movements are to be monitored by the system **10**. The self-contained movement measuring device **12** may be worn by the individual being monitored in a variety of positions based on the specific movement being observed, the particular application in which the device is used, and the convenience of the wearer.

For example, FIG. **2A** shows placement of the movement measuring device **12** on the upper torso of an individual **18**. Placement of the device **12** at this location will allow monitoring of the flexion and extension of the spinal column during a lifting activity. Similarly, FIG. **2B** shows placement of the movement measuring device **12** on the waist or hip of an individual **18**. The movement measuring device **12** may be attached via a clip, Velcro, its own belt, or any other means known in the art. Placement of the device **12** on the belt as shown will also permit monitoring of the individual's movement during physical activity. In particular, the device **12** can monitor the forward and backward bending of the spine as well as lateral bending of the spine to aid in correct bending and lifting tasks. The device **12** is also capable of measuring the distance the wearer walks and how fast he walked. FIG. **2C** shows another alternative embodiment of the movement measuring device **12**. In this version, the movement sensor **13** is separate from the remaining components **15** of the device **12** and is electronically connected to the remaining components **15** via a cable **17** or other commonly used connector. Separating the measurement sensor **13** from the remaining components **15** in this way gives additional flexibility in the use of the device **12**. The device **12** operates in the same manner as previously described; however, the movement sensor **13** can be placed anywhere on the individual's body. Again, the specific application will dictate where the movement sensor **13** should be placed. For example, if a monitored activity requires repeated arm movement, the sensor **13** may be placed anywhere along the individual's arm thereby monitoring and recording movement data for the arm.

FIG. **3** shows a more detailed view of the movement measurement device **12** which forms a crucial part of the previously described system along with its respective external components. The internal components of the movement measurement device **12** are housed in a casing **20**. This

4

casing **20** serves to protect the internal components and is most commonly made of hard molded plastic, although any suitable material may be substituted. Externally visible on the device **12** is at least one visual indicator **22** which is activated by the device **12** when appropriate. In one preferred embodiment, the visual indicator **22** is a bi-colored light emitting diode (LED) which is activated to notify the wearer when a predetermined angle of motion has been exceeded. Through different colors and blinking patterns, the visual indicator **22** signals many different conditions sensed by the device **12** including when the device **12** is turned on or off, when each of various angle limits is exceeded, and when downloading movement data recorded by the device **12**. Alternatively, the visual indicator **22** may be a liquid crystal display or any other display device on which a variety of movement information may be shown. The movement measuring device **12** also contains user inputs **24**. In the preferred embodiment, one user input **24** is an ON/OFF switch for controlling the operation of the device **12**. Another user input **24** on the device **12** is a MUTE button which permits the wearer of the device to turn off any audible indicators. Typically, once an angle limit has been exceeded, the wearer will be notified through the illumination of a visual indicator, the sounding of an audible alarm, vibration of the device **12**, or a combination thereof. In the case of an audible alarm, the MUTE button **24** may be used to turn off the alarm. Any sounds emitted by the device **12** are created by a speaker (not shown) behind the speaker cover **26** located in the external casing **20**. Finally, the casing **20** contains a removable battery cover **28** over an externally accessible battery compartment (not shown) which allows the operator of the device **12** to replace the internal power source. In the preferred embodiment this power source is a 1.5 volt battery.

Reference is now made to a block diagram in FIG. **4** which shows the major internal components of the movement measuring device **12** and their interconnections. The device **12** includes a movement sensor **30** which detects movement and measures associated data such as angle, speed, and distance. The movement sensor **30** generates signals corresponding to the measurement data collected. In a preferred embodiment, the movement sensor **30** is an accelerometer which is capable of detecting angles of movement in multiple planes as well as the velocity at which the movement occurs. Alternatively, multiple accelerometers, each capable of measuring angles of movement in only one plane, may be oriented within the device **12** so that movement in multiple planes may be detected. Although many accelerometers are available on the market, the preferred embodiment uses Part No. AD22217 manufactured by Analog Devices of Norwood, Mass. This component is a low G, multi-axis accelerometer. The movement sensor **30** is electronically connected to a microprocessor **32** which receives the signals generated by the movement sensor **30** for analysis and subsequent processing. The microprocessor **32** not only analyzes and responds to the movement data signals from the sensor **30**, but also controls the actions of all of the electronic components of the device **12**. In a preferred embodiment, the microprocessor **32** is a Motorola MC68HC705C8AFN. It should be noted, however, that other low power, programmable microprocessors may be suitable. The microprocessor **32** constantly monitors the user inputs **34** and acts accordingly. For example, if the device is turned off, the microprocessor **32** monitors the ON/OFF user input **36** to detect when the device **12** is turned back on. Once an "ON" condition is detected, the microprocessor **32** powers up and runs its internal program. The

6,059,576

5

internal program may be stored within read-only memory located in the microprocessor itself or in memory (not shown) located outside the microprocessor **32**.

The components of the device **12** receive power from a power source **38**. In a preferred embodiment the power source **38** is a 1.5 volt DC battery; however, other power sources, including alternating current, may be used. The power source **38** is connected to a power converter **40** if DC-DC or AC-DC conversion is required. In one embodiment the power converter **40** converts the 1.5 volt DC power supply from the battery to 3.3 volts DC for use with the other electronic components of the device **12**.

Also connected between the power source **38** and the microprocessor **32** is a conventional power supply manager **42** such as part number ADM706TAR from Analog Devices. The power supply manager **42** performs several functions. If a low battery condition exists, the power supply manager **42** reports the problem to the microprocessor **32** so that the microprocessor **32** may indicate the condition to the user through one or more output indicators **44**. The output indicators **44** consist of any combination of audible, visual, or tactile indicators for communicating with the wearer of the device. Audible indicators range from a single pitched tone to voice-synthesized messages in English or any foreign language. Visual indicators which could be used include single, monochromatic LEDs, multiple colored lights, and/or liquid crystal displays. The tactile indicator used in a preferred embodiment is a conventional vibrator mechanism which can be detected by the wearer. The power supply manager **42** also regulates the activity of the power converter **40** to insure that the proper voltage is constantly supplied to the device components.

The microprocessor **32** is connected to a clock **46** which is used as an internal clock for coordinating the functioning of the microprocessor **32**. The clock **46** also serves as a real time clock to provide date and time information to the microprocessor **32**. The clock **46** may have its own clock battery **48** or may receive power directly from power source **38**.

The microprocessor **32** constantly monitors the movement data received from the movement sensor **30**. The microprocessor **32** analyzes the movement data received from the sensor **30** and, based on its internal programming, responds to the data. If a recordable event occurs, the microprocessor **32** retrieves the date/time stamp from the clock **46** and records the event information along with the date/time stamp in memory **50**. In a preferred embodiment, the memory is electrically erasable programmable read-only memory (EEPROM) so that, in the event the device should lose power, the information recorded in memory **50** will not be lost. The device also contains an input/output (I/O) port **52** which is connected to the microprocessor **32**. The I/O port **52** is used to receive and transmit data collected by the device **12** between the microprocessor **32** and an external computer (not shown). In a preferred embodiment, the I/O port **52** is a serial port which includes an RS232 voltage level converter download board. Movement data stored in memory **50** can be sent through the I/O port **52** to a download device. In addition, user-programmable configuration information can be entered by a user via the external computer and uploaded through the I/O port **52** for use by microprocessor **32**. The configuration information can encompass an array of information including, but not limited to, a series of notice levels corresponding to increasing angles of movement, an event threshold, a reset range for tilt determination, and a time period for entering idle mode. Once the device **12** is operating, the microprocessor **32**

6

constantly checks to see if the angle movement information received from the movement sensor **30** indicates that the wearer has exceeded any of the pre-set notice levels. Depending on which notice level has been exceeded, the microprocessor **32** will cause the device **12** to react; i.e., by sounding an alarm. In addition, the microprocessor **32** will obtain the date/time stamp from the clock **46** and store that information along with the notice level that was exceeded into memory **50** for later analysis and reporting. Whenever an alarm is activated by the microprocessor **32**, the MUTE control switch **54** may be used to deactivate the alarm; however, the corresponding movement data associated with the activation of the alarm is still recorded in memory **50**. Furthermore, the date and time the MUTE control switch **54** was activated is also recorded by the device **12**.

A significant feature of the device **12** of the present invention is that it gives instant information to the wearer at the moment of incorrect movement and also records the information for future reference and analysis. The device **12** monitors a wide variety of "events" and records each event with a date/time stamp. Many different types of "events" may be defined to be monitored by the device **12**. As previously stated, any movement which surpasses any identified angle limit of movement (based on the specific physical task being accomplished and the range of motion needed to execute the task properly) is a standard recordable event. In addition, the device will record when no discernable movement has occurred for a predetermined amount of time (idle function), when the wearer has pressed the MUTE switch in response to an alarm (MUTE function), when the wearer's speed of movement exceeds a predefined speed (quickness function), when the device is turned on or off, when a low battery warning has been issued, when the battery is changed, when the device has been tampered with (such as removing the battery before a low battery condition has been detected), when the device is tilted outside of a specified range for a designated period of time, and when the device has measured a predetermined maximum number of particular angle limits reached. These functions are further described hereinbelow.

Whenever an incorrect user movement is sensed by the device **12**, the angular limit notice as programmed by the user is given only once. Before the device **12** can reset itself to be able to give that same angle notice on the next incorrect movement, the device **12** must return to a predetermined position (usually the upright position). If the device **12** is maintained outside of its predefined reset range for a designated period of time after an angle limit has been exceeded, a "tilt" event will be recorded and an alarm may be activated. When this situation occurs, the device **12** must be returned to its defined reset position, or the MUTE button must be pressed. The device **12** is also programmed to automatically enter a power saving mode when no motion has been detected for a given amount of time. This "idle" function event is recorded by the microprocessor **32** to indicate that the device is either not being worn or is not being used properly. The device **12** maintains the minimum amount of operating power required to detect the next movement so that, once movement is detected, the device **12** exits the idle mode and records the date and time when the exit occurred.

The device **12** will record any attempted tampering. In a preferred embodiment, this event occurs when the battery is removed before a low battery condition is detected by the device. The device **12** will also inform the wearer when the battery is low. In the preferred embodiment, the device **12** has two batteries, a battery which operates the device **12** and

6,059,576

7

an internal time clock battery. The internal clock battery powers the time clock 46 and aids in other operations of the device 12 when the voltage drops on the device battery. The microprocessor 32 and memory 50 do not lose information when battery power is lost from either battery.

As previously mentioned, the device 12 is completely user programmable via an external computer. These user programmed operation parameters are uploaded to the microprocessor 32 through the download device (not shown). The user may program the microprocessor 32 with an array of functions for the device 12 to perform. Primary among these is the ability to change the angular levels at which notices will be generated in order to fulfill particular application needs. In this way, the user may choose the angular positions at which he wants to be warned when they are exceeded. In the preferred device, up to three angle limits may be monitored by the device; however, any number of angles may be tracked depending upon the application. Each angle limit can be degree specific or extend over a range of degrees. When a range is used, the user specifies the starting and incremental values in degrees. Thus, an angle limit may be set to occur every five degrees beginning with an initial angle limit value. The movement sensor 30 used in the preferred embodiment can measure angles to within plus or minus 0.5° and as often as 1000 times a second. The most common use for the angle range limits is when the device 12 is worn on the hip since angle measurements cannot be made as accurately there. In contrast, when the device 12 is worn on the upper torso, results can be measured more accurately and the device 12 can be set to measure each degree of movement.

As mentioned above, once a wearer of the device 12 exceeds the first defined angle limit, a notice for that limit is given to the wearer. The notice may be a combination of a visual warning, a tactile warning, and/or an audible warning. The microprocessor 32 also stores the specific angle limit which was exceeded along with the date/time stamp. Upon exceeding the second defined angle, the wearer is issued a second notice which may be the same as or different from the first notice. These different notice characteristics may include a change in pitch for audible alarms, a difference in duration for tactile alarms, and/or a blinking, different colored, or other visual warning.

The "quickness" function of the device 12 measures the speed of an associated physical movement made by the wearer and was developed to address the following problem. In essence, the warning notice due to exceeding a first angle may be overridden by the warning notice for a second angle, thus appearing to give only the second notice. The device 12 may be programmed to recognize when this occurs and to indicate that the associated physical activity was performed by the wearer with excessive speed. If so programmed, the device 12 will record both notices, and the microprocessor 32 will record a quickness violation for further analysis and reporting by the computer. The device 12 may also include an event threshold function in its programming. This feature allows the user of the device 12 who has access to the download capabilities and the analysis software hereinafter described to determine a maximum number of incorrect movements ("events") allowed in a predetermined time period by event type. In addition, the user may program a certain response, such as shutting down the device 12 entirely, emitting a special alarm, and/or recording the date and time each event threshold was met. In a preferred embodiment, if the device 12 is programmed for shut down upon reaching the event threshold, the device 12 will require downloading to the computer 16 and being reset before it

8

can be operated again. This feature serves to alert the responsible party of a potential problem that must be dealt with immediately via retraining or any other means the responsible party deems necessary.

The device 12 also has additional functions and capabilities. Each unit can be assigned to a specific individual, patient or employee and later reassigned to a different person through the use of specific identification numbers. In a preferred embodiment, the device 12 requires a download of all movement data stored in memory under a previous identification number before it can be reassigned. Further, the download information along with the specific user identification number can be downloaded to the computer 16 only once in order to avoid duplicate records.

As generally described above, the system and device 12 of the present invention have practical application in a number of situations. They may be used in medical applications requiring the monitoring of physical movement. Among such applications is physical therapy which may be conducted either by the patient in the patient's home or by medical professionals in a medical environment. More significantly, the device and system have application in an industrial setting, particularly manufacturing, where workers are required to perform repetitive manual tasks. Supervising employers can use the device and system to insure that employees are performing their tasks properly while minimizing the risk of employee injury.

By virtue of the sophisticated nature of the microprocessor 32, the device 12 can fulfill these additional business, industry and medical needs. Furthermore, wireless capabilities may be added to the device 12 to allow downloading of information from the device 12 to a computer 16 without the need for cables or docking stations. In yet another embodiment, the radio frequency capability may allow the user to wear minimal hardware (consisting primarily of the movement sensor) on the body while transmitting the details of each physical movement to a remote microprocessor 32 for analysis and storage.

Once the data from the device 12 has been downloaded to the computer 16, software running on the computer 16 is used to interpret the data and produce a number of reports and histories. This history information may include, but is not limited to, the dates and times when the device 12 was turned on and off; the number, with dates and times, of each notice given along with the type of notice; the number, date and time the device 12 reached an event threshold; when, how long, and how many times the device 12 powered down; the date and time the device 12 was muted; the date and time when the battery was changed; the date and time when the battery was tampered with; and the last time the device 12 was downloaded. Any of the above-mentioned predefined reports may be generated; in addition, the user may program additional reports and histories specific to the application to be monitored.

FIG. 5 is a flowchart of the steps executed by the microprocessor 32 in the movement measurement device 12 to recognize and record movement data. Referring to FIG. 5, when the device 12 is off, the microprocessor 32 constantly checks for a change in the ON/OFF state 60 by polling the ON/OFF switch to see if it has been switched to the ON position. Once the microprocessor 32 detects that the device 12 has been turned on, the microprocessor 32 conducts some basic initialization and housekeeping functions 62. This may include checking memory to ensure angle limits have been entered, verifying that angle limits are increasing in value (i.e., the second angle limit is not smaller than the first), and

6,059,576

9

10

initializing internal program parameters. Then the microprocessor **32** checks to see whether any motion has been detected **64** by the movement sensor **30**. If no motion has been detected, the microprocessor **32** will increment a "no-motion" counter **66**. The microprocessor **32** then checks whether the no-motion counter has reached a predefined number of cycles indicating that the device should power down. If the requisite number of cycles indicating idle mode have elapsed, the microprocessor records the idle event (along with the date and time stamp) in memory, and the device enters the idle mode **72**. Once in idle mode, the microprocessor repeatedly checks for motion **72**. As long as no motion occurs, the device remains in idle mode. Once motion is detected, the microprocessor records an event that the device has exited idle mode (with the corresponding date and time) **76**. The microprocessor then returns to step **64** where it again attempts to detect motion. If the no-motion counter has not reached the preset limit corresponding to idle mode, the microprocessor will check to see whether the device has remained outside of its predefined reset range for a designated amount of time **78**. If not, the microprocessor reexecutes the cycle for detecting motion **64**. If, however, the microprocessor recognizes a tilt event, an alarm corresponding to a tilt event is activated **80**. Once the microprocessor has recognized a tilt event, it repeatedly checks whether the device has been moved back within its reset range **82**. If it has not, the microprocessor continues to activate the tilt alarm. Once the device has been returned to within its reset range, the microprocessor checks again for motion **64**.

Once the microprocessor detects motion in step **64**, the first thing it does is clear the no-motion counter **84**. The microprocessor then checks to see whether it has recorded a "proper movement" in the past **86**. If no proper movement has occurred, the microprocessor checks whether the proper movement flag has been set **88**. If the proper movement flag has not been set, the microprocessor returns to its initial motion checking step **64**. If, however, the proper movement flag has been set, the microprocessor will record the occurrence of a proper movement event along with the date/time stamp **90**. The microprocessor then clears all notice and the proper movement flags in step **92** and returns to the motion detection step **64**. If, on the other hand, the microprocessor has detected a prior proper movement **86**, it so indicates by setting the proper movement **94**. The microprocessor then checks whether the first angle limit has been exceeded **96**. If this first limit has not yet been exceeded, the microprocessor returns to the motion detection step **64**. If the first angle limit has been exceeded, the microprocessor activates the appropriate alarm and records the event along with the date and time **98**. The microprocessor then clears the proper movement flag and sets the first angle notice flag **100**. The microprocessor then checks whether the device has moved beyond the next angle limit **102**. If not, the microprocessor checks whether the angle is less than that required to constitute a proper movement **104**. If not, then the microprocessor continues to check whether the angle of movement is less than a proper movement angle. If the angle is less than that constituting a proper movement, the microprocessor triggers a reset flag indicating that the device has been reset **106**. After reset, the microprocessor checks whether any of the angle limits have been exceeded thereby setting any of the notice flags **108**. If any notice flags have been set, the microprocessor will perform step **92** to clear all of the notice flags and reset the proper movement flag. If none of the notice flags have been set before the device was reset, the microprocessor will perform step **90** to record a

proper movement event along with the date and time. It then continues processing at step **92**.

Once the angle of movement detected exceeds the next angle limit, the microprocessor will record the corresponding notice event along with the date and time and activate the appropriate notice alarm in step **110**. The microprocessor then checks if the last movement exceeded the final angle limit at step **112**. If not, then the process returns to step **102** to check for movement beyond the next angle limit. If the final notice event was detected, then the microprocessor will increment the event threshold counter by one at step **114** if this option has been selected by the user. Next, the microprocessor will check to see whether the event threshold limit has been reached **116**. If not, the microprocessor will perform step **104** until the device is reset due to the movement angle being less than that required for a proper movement. If the event threshold has been reached, then the microprocessor will record the event threshold, activate the associated alarm, and shut down the device **118**. The microprocessor will prevent the device from operating any further until its information has been downloaded **120**. Once the stored data has been downloaded, the microprocessor returns to its initial motion detection step **64** for further operation.

As previously alluded to herein, the device and system of the present invention can be used in a wide number of different applications requiring monitoring and feedback of physical movement. In particular, the device and system have various medical applications including rehabilitation and physical therapy associated with an injured patient. The movement sensor is simply attached to the appropriate body part requiring monitoring, and data collection is then commenced. Besides providing the operator with instant feedback regarding the physical movement being monitored, a variety of data may be collected from the number of movement repetitions meeting or exceeding a required range to the determination and tracking of maximum range-of-motion mobility of an injured patient for later analysis. While the device and system may be operated by a medical professional in a supervisory capacity, both are simple enough to be used by an individual patient alone with download and analysis by the medical professional at a later time.

The device also has excellent application to the monitoring and analysis of physical labor performed by employees. The devices may be passed out to employees having repetitive physical tasks so that proper safety in performing the tasks, such as lifting, may be practiced. Each device can be assigned to a particular individual for a specified amount of time and programmed to monitor that individual's physical tasks. After the device is turned in, its collected information can be downloaded to the system for reporting and analysis purposes based on specific movement limits and other operational parameters programmed into the device for the particular movement being monitored. Improper movements made by the individual during the time period in question are identified, and the employee can be notified in order to make necessary corrections to the way the task is performed in order to avoid injury resulting from improper movement. The device can be used again later to ensure that the employee continues to exercise the movement guidelines as previously instructed.

The device also has application in the area of sports. For example, it may be worn by a golfer in order to monitor torso, waist, shoulder and arm movement during various drives and putts. The data collected by the device may then be used as a tool to aid in the analysis and improvement of the individual's stroke technique. Use of the device is not

6,059,576

11

limited to golf but may be used for any number of sports, including football, baseball, basketball, or tennis. And, due to the unique programmability of the device, it has more than one application within any single sport. For example, in baseball, the device and system may be used to improve technique associated with hitting or with throwing.

Still other objects and advantages of the present invention will become readily apparent to those skilled in this art from the detailed description, wherein multiple preferred embodiments of the invention are shown and described, simply by way of illustration of the best mode contemplated by the inventor for carrying out the invention. As will be realized, the invention is capable of other and different embodiments, and its several details are capable of modifications in various obvious respects, all without departing from the invention. Accordingly, the drawings and description are to be regarded as illustrative in nature, and not as restrictive. Variations in the description likely to be conceived of by those skilled in the art still fall within the breadth and scope of the disclosure of the present invention. The primary import of the present invention lies in its compact size, ease of use, and detailed information gathering and reporting features. Its benefits derive from the versatility of its monitoring capabilities as well as the specific applications for which it may be used. Again, it is understood that other applications of the present invention will be apparent to those skilled in the art upon reading the preferred embodiments and consideration of the appended claims.

We claim:

1. A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data; and

an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;

wherein said movement sensor measures the angle and velocity of said movement.

2. The device of claim 1 further comprising at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters to and from a computer.

3. The device of claim 1 wherein said device is compact and weighs less than one pound.

4. The device of claim 1 wherein said movement sensor comprises at least one accelerometer.

5. The device of claim 1 wherein said movement sensor can simultaneously detect real time movement along at least two orthogonal axes.

6. The device of claim 1 wherein said movement sensor is housed separately from said microprocessor.

7. The device of claim 1 wherein said monitored body part movement is torso or limb movement.

8. The device of claim 1 wherein said data measured by said movement sensor includes the distance of said movement.

12

9. The device of claim 1 wherein said output indicator is visual.

10. The device of claim 1 wherein said output indicator is audible.

11. The device of claim 1 wherein said output indicator is tactile.

12. The device of claim 1 wherein said user input is a switch.

13. A system to aid in training and safety during physical activity, said system comprising

a portable, self-contained movement measuring device, said movement measuring device further comprising

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data;

at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and

an output indicator connected to said microprocessor;

a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and

a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes;

wherein said movement sensor measures the angle and velocity of said movement.

14. The system of claim 13 wherein said computer is a personal computer.

15. The system of claim 13 wherein said computer is connected to a network of other computers.

16. The system of claim 13 wherein said download device is a physical docking station.

17. The system of claim 13 wherein said download device is a wireless device.

18. The system of claim 17 wherein said wireless device uses radio frequency.

19. The system of claim 17 wherein said wireless device uses infrared light.

20. A method to monitor physical movement of a body part comprising the steps of:

attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement in any direction;

measuring data associated with said physical movement;

interpreting said physical movement data based on user-defined operational parameters and a real-time clock; and

storing said data in memory.

21. The method of claim 20 wherein said physical movement data includes velocity data of said movement, angle measurement data taken along at least two orthogonal axes, and related date and time data.

22. The method of claim 21 further comprising the step of defining said parameters for a specific physical movement prior to said interpreting step.

6,059,576

13

**23**. The method of claim **21** further comprising the step of downloading said data from said movement measuring device to a computer for reporting and analysis purposes.

**24**. The method of claim **21** wherein said interpreting step comprises teaching an individual how to properly perform said physical movement.

**25**. The method of claim **20** wherein said movement measuring device is an accelerometer.

**26**. The method of claim **20** further comprising the step of providing real time feedback regarding said movement.

14

**27**. The method of claim **26** wherein said physical movement is physical labor.

**28**. The method of claim **26** wherein said physical movement is an exercise related to medical treatment.

**29**. The method of claim **26** wherein said physical movement is an exercise to improve technique related to an athletic skill.

\*  \*  \*  \*  \*

# EXHIBIT B

(12) **EX PARTE REEXAMINATION CERTIFICATE** (10541st)

# United States Patent
**Brann**

(10) **Number:**     **US 6,059,576 C1**

(45) **Certificate Issued:**     **Mar. 17, 2015**

(54) **TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY**

(75) Inventor:     **Theodore L. Brann**, Mission, TX (US)

(73) Assignee:     **Logantree L P**, Boerne, TX (US)

**Reexamination Request:**
No. 90/013,201, Apr. 4, 2014

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **6,059,576** |
| Issued: | **May 9, 2000** |
| Appl. No.: | **08/976,228** |
| Filed: | **Nov. 21, 1997** |

(51) **Int. Cl.**
*A61B 5/11*          (2006.01)
*A63B 24/00*          (2006.01)

(52) **U.S. Cl.**
CPC ........... *A61B 5/1116* (2013.01); *A63B 2220/40* (2013.01); *Y10S 482/901* (2013.01)
USPC ............... 434/247; 600/595; 482/8; 482/901; 702/101; 601/34

(58) **Field of Classification Search**
None
See application file for complete search history.

(56)          **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 90/013,201, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Danton DeMille

(57)          **ABSTRACT**

An electronic device, system and method to monitor and train an individual on proper motion during physical movement. The system employs an electronic device which tracks and monitors an individual's motion through the use of an accelerometer capable of measuring parameters associated with the individual's movement. The device also employs a user-programmable microprocessor which receives, interprets, stores and responds to data relating to the movement parameters based on customizable operation parameters, a real-time clock connected to the microprocessor, memory for storing the movement data, a power source, a port for downloading the data from the device to other computation or storage devices contained within the system, and various input and output components. The downloadable, self-contained device can be worn at various positions along the torso or appendages being monitored depending on the specific physical task being performed. The device also detects the speed of movements made while the device is being worn. When a preprogrammed recordable event is recognized, the device records the time and date of the occurrence while providing feedback to the wearer via visual, audible and/or tactile warnings.



US 6,059,576 C1

# 1

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

Claims **1**, **13** and **20** are determined to be patentable as
amended.

Claims **2-12**, **14-19** and **21-29**, dependent on an amended
claim, are determined to be patentable.

New claims **30-185** are added and determined to be
patentable.

1. A portable, self-contained device for monitoring move-
ment of body parts during physical activity, said device com-
prising:

a movement sensor capable of measuring data associated
with unrestrained movement in any direction and gen-
erating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and
to said power source, said microprocessor capable of
receiving, interpreting, storing and responding to said
movement data based on user-defined operational
parameters, *detecting a first user-defined event based on
the movement data and at least one of the user-defined
operational parameters regarding the movement data,
and storing first event information related to the
detected first user-defined event along with first time
stamp information reflecting a time at which the move-
ment data causing the first user-defined event occurred;*

at least one user input connected to said microprocessor for
controlling the operation of said device;

a real-time clock connected to said microprocessor;
memory for storing said movement data; and

an output indicator connected to said microprocessor for
signaling the occurrence of user-defined events;

wherein said movement sensor measures the angle and
velocity of said movement.

13. A system to aid in training and safety during physical
activity, said system comprising

a portable, self-contained movement measuring device,
said movement measuring device further comprising

a movement sensor capable of measuring data associ-
ated with unrestrained movement in any direction and
generating signals indicative of said movement;

a power source;

a microprocessor connected to said power source, said
microprocessor capable of receiving, interpreting,
storing and responding to said movement data based
on user-defined operational parameters, *detecting a
first user-defined event based on the movement data
and at least one of the user-defined operational
parameters regarding the movement data, and storing
first event information related to the detected first
user-defined event along with first time stamp infor-*

# 2

*mation reflecting a time at which the movement data
causing the first user-defined event occurred;*

at least one user input connected to said microprocessor
for controlling the operation of said device;

a real-time clock connected to said microprocessor;
memory for storing said movement data;

at least one input/output connected to said micro-
processor for downloading said data and uploading
said operational parameters; and

an output indicator connected to said microprocessor;

a computer running a program capable of interpreting
and reporting said movement data based on said
operational parameters; and

a download device electronically connected to said move-
ment measuring device and said computer for transmit-
ting said movement data and operational parameters
between said movement measuring device and said
computer for analysis, reporting and operation pur-
poses;

wherein said movement sensor measures the angle and
velocity of said movement.

20. A method to monitor physical movement of a body part
comprising the steps of:

attaching a portable, self-contained movement measuring
device to said body part for measuring unrestrained
movement in any direction;

measuring data associated with said physical movement;

interpreting, *using a microprocessor included in the por-
table, self-contained movement measuring device,* said
physical movement data based on user-defined opera-
tional parameters and a real-time clock; **[**and**]**

storing said data in memory;

*detecting, using the microprocessor, a first user-defined
event based on the movement data and at least one of the
user-defined operational parameters regarding the
movement data; and*

*storing, in said memory, first event information related to
the detected first user-defined event along with first time
stamp information reflecting a time at which the move-
ment data causing the first user-defined event occurred.*

*30. The device of claim 1, wherein said microprocessor is
configured to store, in said memory, date information associ-
ated with the first time stamp information.*

*31. The device of claim 1, wherein said microprocessor is
configured to retrieve said first time stamp information from
said real-time clock and associate the retrieved first time
stamp information with said first user-defined event.*

*32. The device of claim 31, wherein said microprocessor is
configured to retrieve said first time stamp information from
said real-time clock based on the detection of the user-defined
event.*

*33. The device of claim 1, wherein said memory is config-
ured to continue to store said movement data in response to
battery power being lost from said power source.*

*34. The device of claim 1, wherein said movement sensor is
configured to continuously check for said movement.*

*35. The device of claim 34, wherein said microprocessor is
configured to continuously interpret, based on the user-de-
fined operational parameters, said movement data received
from said movement sensor.*

*36. The device of claim 1, wherein said output indicator is
configured to display information signaling the occurrence of
the first user-defined event based on the detection of the first
user-defined event.*

US 6,059,576 C1

3

37. The device of claim 36, wherein said output indicator is configured to display said information signaling the occurrence of the first user-defined event based on said first time stamp information.

38. The device of claim 1, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

39. The device of claim 1, wherein at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

40. The device of claim 39, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

41. The device of claim 39, wherein said memory is configured to store said first event information indicating that the predetermined threshold is met.

42. The device of claim 41, wherein said memory is configured to store the first time stamp information in association with said first event information.

43. The device of claim 1, wherein said output indicator is configured to indicate a low battery condition of the device.

44. The device of claim 9, wherein said output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.

45. The device of claim 1, wherein said movement data stored in the memory is configured to be downloaded to a computer.

46. The device of claim 45, further comprising:

software configured to communicate with external software, wherein the external software is configured to present the downloaded movement data to the user.

47. The device of claim 46, wherein said external software is configured to run on the computer.

48. The device of claim 47, wherein said downloaded movement data is configured to be analyzed by said user via said external software.

49. The device of claim 46, wherein said external software is configured to interpret said movement data and produce at least one report.

50. The device of claim 46, wherein said external software is configured to interpret said movement data and produce at least one history report.

51. The device of claim 50, wherein at least one history report includes dates and times of said movement data.

52. The device of claim 46, wherein said external software is configured to allow the user to program additional reports and histories with respect to said movement data of said user.

53. The device of claim 45, wherein said movement data is configured to be downloaded to said computer via a wired connection.

54. The device of claim 45, wherein said movement data is configured to be downloaded to said computer via a wireless connection.

55. The device of claim 39, wherein the output indicator is configured to provide a visual indicator to the user regarding the predetermined threshold being reached.

56. The device of claim 1, wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred.

4

57. The device of claim 56, wherein when the microprocessor detects that one of the user-defined events occurred based on the movement data reaching one of the plurality of the thresholds, the output indicator displays a corresponding one of the notifications indicating that one of the user-defined events has occurred.

58. The device of claim 56, wherein the plurality of thresholds are different from each other.

59. The device of claim 56, wherein the plurality of notifications are different visual indicators.

60. The device of claim 59, wherein at least one of the visual indicators includes a blinking indicator.

61. The device of claim 39, wherein said microprocessor is configured to detect occurrence of the first user-defined event by comparing said movement data to said predetermined threshold.

62. The device of claim 1, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.

63. The device of claim 62, wherein said movement sensor is configured to measure movement of said user's arm.

64. The device of claim 1, wherein said movement sensor is configured to measure a walking distance.

65. The device of claim 64, wherein said device is configured to be wearable by the user, and said movement sensor is configured to measure said walking distance of said user.

66. The device of claim 1, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information,

wherein said movement sensor is configured to continuously check for said movement,

wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,

wherein the device further comprises software configured to communicate with external software configured to run on a computer and present the downloaded movement data,

wherein said external software is configured to produce at least one report based on said movement data,

wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred,

wherein said device is configured to be placed on said user's arm to monitor and record said movement data,

wherein said movement sensor is configured to measure movement of said user's arm.

67. The system of claim 13, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information.

68. The system of claim 13, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.

69. The system of claim 68, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock based on the detection of the first user-defined event.

70. The system of claim 13, wherein said memory is configured to continue to store said movement data in response to battery power being lost from said power source.

US 6,059,576 C1

5

*71. The system of claim 13, wherein said movement sensor is configured to constantly checks for said movement.*

*72. The system of claim 71, wherein said microprocessor is configured to continuously interpret, based on the user-defined operational parameters, said movement data received from said movement sensor.*

*73. The system of claim 13, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event.*

*74. The system of claim 73, wherein said output indicator is configured to display said information signaling the occurrence of the first user-defined event based on said first time stamp information.*

*75. The system of claim 13, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.*

*76. The system of claim 13, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.*

*77. The system of claim 76, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.*

*78. The system of claim 76, wherein said memory is configured to store said first event information indicating that the predetermined threshold is met.*

*79. The system of claim 78, wherein said memory is configured to store the first time stamp information in association with said first event information.*

*80. The system of claim 13, wherein said output indicator is configured to indicate a low battery condition of the device.*

*81. The system of claim 13, wherein said output indicator is visual, and said output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.*

*82. The system of claim 13, wherein said movement data stored in the memory is configured to be downloaded to the computer.*

*83. The system of claim 82, wherein the portable, self-contained movement measuring device further comprises:*

*software configured to communicate with the program running on the computer, wherein the program is configured to present the downloaded movement data to the user.*

*84. The system of claim 83, wherein said downloaded movement data is configured to be analyzed by said user via said program.*

*85. The system of claim 83, wherein said program is configured to interpret said movement data and produce at least one report.*

*86. The system of claim 83, wherein said program is configured to interpret said movement data and produce at least one history report.*

*87. The system of claim 86, wherein said at least one history report includes dates and times of said movement data.*

*88. The system of claim 83, wherein said program is configured to allow the user to program additional reports and histories with respect to said movement data of said user.*

*89. The system of claim 82, wherein said movement data is configured to be downloaded to said computer, using the download device, via a wired connection.*

*90. The system of claim 82, wherein said movement data is configured to be downloaded to said computer, using the download device, via a wireless connection.*

6

*91. The system of claim 76, wherein the output indicator is configured to provide a visual indicator to the user regarding the predetermined threshold being reached.*

*92. The system of claim 13, wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of a plurality of user-defined events occurred.*

*93. The system of claim 92, wherein when the microprocessor detects that one of the user-defined events occurred based on the movement data reaching one of the plurality of the thresholds, the output indicator displays a corresponding one of the notifications indicating that one of the user-defined events has occurred.*

*94. The system of claim 92, wherein the plurality of thresholds are different from each other.*

*95. The system of claim 92, wherein the plurality of notifications are different visual indicators.*

*96. The system of claim 95, wherein at least one of the visual indicators includes a blinking indicator.*

*97. The system of claim 13, wherein said output indicator is configured to signal the occurrence of user-defined events.*

*98. The system of claim 76, wherein said microprocessor is configured to detect occurrence of the first user-defined event by comparing said movement data to said predetermined threshold.*

*99. The system of claim 13, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.*

*100. The system of claim 99, wherein said movement sensor configured to measure movement of said user's arm.*

*101. The system of claim 13, wherein said movement sensor configured to measure a walking distance.*

*102. The system of claim 101, wherein said device is configured to be wearable by the user, and said movement sensor is configured to measure said walking distance of said user.*

*103. The system of claim 13, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information,*

*wherein said movement sensor is configured to continuously check for said movement,*

*wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,*

*wherein said movement data stored in the memory is configured to be downloaded to the computer,*

*wherein the device further comprises software configured to communicate with the program which presents the downloaded movement data,*

*wherein said program is configured to produce at least one report based on said movement data,*

*wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred,*

*wherein said device is configured to be placed on said user's arm to monitor and record said movement data,*

*wherein said movement sensor configured to measure movement of said user's arm.*

US 6,059,576 C1

7

104. The method of claim 20, further comprising:
storing, in said memory, date information associated with the first time stamp information.

105. The method of claim 20, further comprising:
retrieving said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.

106. The method of claim 105, further comprising:
retrieving said first time stamp information from said real-time clock based on the detection of the first user-defined event.

107. The method of claim 20, wherein said storing comprises continuously storing said movement data after battery power is lost from a power source of the portable, self-contained movement measuring device.

108. The method of claim 20, further comprising:
continuously monitoring for said physical movement using a movement sensor of the portable, self-contained movement measuring device.

109. The method of claim 108, wherein said interpreting comprises:
continuously interpreting, based on the user-defined operational parameters, said physical movement data.

110. The method of claim 20, further comprising:
displaying, using an output indicator of the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the user-defined event.

111. The method of claim 110, wherein said output indicator displays said information signaling the occurrence of the first user-defined event based on said first time stamp information.

112. The method of claim 20, further comprising:
displaying, using an output indicator included the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

113. The method of claim 20, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

114. The method of claim 113, wherein an output indicator of the portable, self-contained movement measuring device displays information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

115. The method of claim 113, further comprising:
storing, in said memory, said first event information indicating that the predetermined threshold is met.

116. The method of claim 115, further comprising:
storing, in said memory, the first time stamp information in association with said first event information.

117. The method of claim 20, further comprising:
indicating a low battery condition, using an output indicator of the portable, self-contained movement measuring device.

118. The method of claim 20, wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer.

119. The method of claim 118, further comprising:
communicating with external software, wherein the external software is configured to present said interpreted physical movement data to the user.

120. The method of claim 119, wherein said external software is configured to run on a computer.

8

121. The method of 20, further comprising:
producing a report based on said interpreted physical movement data.

122. The method of claim 119, further comprising:
producing at least one report based on said interpreted physical movement data using the external software.

123. The method of claim 119, further comprising:
producing at least one history report based on said interpreted physical movement data using the external software.

124. The method of claim 123, wherein said at least one history report includes dates and times of said physical movement data.

125. The method of claim 119, further comprising:
providing additional reports and histories with respect to said interpreted physical movement data, wherein the additional reports and histories are programmed by the user via the external software.

126. The method of claim 118, wherein said physical movement data is configured to be downloaded to said computer via a wired connection.

127. The method of claim 118, wherein said movement data is configured to be downloaded to the computer via a wireless connection.

128. The method of claim 113, further comprising:
providing, via an output indicator of the portable, self-contained movement measuring device, a visual indicator to the user regarding the predetermined threshold being reached.

129. The method of claim 20, further comprising:
storing the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein the detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of the thresholds.

130. The method of claim 129, wherein in response to detecting that one of the user-defined events occurred based on the movement data reaching one of the plurality of the thresholds, the method further comprises:
displaying, via an output indicator of the portable, self-contained movement measuring device, a corresponding one of the notifications indicating that one of the user-defined events has occurred.

131. The method of claim 129, wherein the plurality of thresholds are different from each other.

132. The method of claim 129, wherein the plurality of notifications are different visual indicators.

133. The method of claim 132, wherein at least one of the visual indicators includes a blinking indicator.

134. The method of claim 20, further comprising:
signaling, using an output indicator included in the portable, self-contained movement measuring device, the occurrence of user-defined events.

135. The method of claim 113, wherein the detecting comprises comparing said physical movement data to said predetermined threshold.

136. The method of claim 20, wherein said body part is a user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.

137. The method of claim 136, wherein said measuring the data comprises measuring the data using a movement sensor of the portable, self-contained movement measuring device.

138. The method of claim 20, further comprising:
measuring a walking distance based on the interpreted physical movement data.

US 6,059,576 C1

9

10

139. The method of claim 20, further comprising:

storing, in said memory, date information associated with the first time stamp information;

continuously monitoring for said physical movement using a movement sensor of the portable, self-contained movement measuring device;

displaying, using an output indicator included the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,

wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer;

communicating with external software configured to run on the computer and present said interpreted physical movement data to the user;

producing a report based on said interpreted physical movement data using the external software; and

storing the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein the detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of the thresholds,

wherein said body part is a user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.

140. The device of claim 1, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

141. The device of claim 140, wherein the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

142. The device of claim 141, wherein the displayed first information is different from the displayed second information.

143. The device of claim 1, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

144. The device of claim 1, wherein said first user-defined event is a predetermined type of movement.

145. The device of claim 144, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

146. The device of claim 144, wherein the predetermined type of movement is movement exceeding a predefined speed.

147. The device of claim 144, wherein the predetermined type of movement is no movement for a predetermined amount of time.

148. The device of claim 144, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

149. The device of claim 1, wherein said microprocessor is configured to detect a second event based on the movement data and at least one of the user-defined operational parameters, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

150. The device of claim 149, wherein said second event is a predetermined type of movement.

151. The device of claim 150, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

152. The device of claim 150, wherein the predetermined type of movement is movement exceeding a predefined speed.

153. The device of claim 150, wherein the predetermined type of movement is no movement for a predetermined amount of time.

154. The device of claim 150, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

155. The system of claim 13, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

156. The system of claim 155, wherein the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

157. The system of claim 156, wherein the displayed first information is different from the displayed second information.

158. The system of claim 13, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

159. The system of claim 13, wherein said first user-defined event is a predetermined type of movement.

160. The system of claim 159, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

161. The system of claim 159, wherein the predetermined type of movement is movement exceeding a predefined speed.

162. The system of claim 159, wherein the predetermined type of movement is no movement for a predetermined amount of time.

163. The system of claim 159, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

164. The system of claim 13, wherein said microprocessor is configured to detect a second event based on the movement data and at least one of the user-defined operational param-

US 6,059,576 C1

**11**

eters, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

165. The system of claim 164, wherein said second event is a predetermined type of movement.

166. The system of claim 165, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

167. The system of claim 165, wherein the predetermined type of movement is movement exceeding a predefined speed.

168. The system of claim 165, wherein the predetermined type of movement is no movement for a predetermined amount of time.

169. The system of claim 165, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

170. The system of claim 13, wherein said movement sensor comprises at least one accelerometer.

171. The method of claim 20, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said interpreting comprises interpreting said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

172. The method of claim 171, further comprising:

displaying, using an output indicator included in the portable, self-contained movement measuring device, first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met and second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

**12**

173. The method of claim 172, wherein the displayed first information is different from the displayed second information.

174. The method of claim 20, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

175. The method of claim 20, wherein said first user-defined event is a predetermined type of movement.

176. The method of claim 175, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

177. The method of claim 175, wherein the predetermined type of movement is movement exceeding a predefined speed.

178. The method of claim 175, wherein the predetermined type of movement is no movement for a predetermined amount of time.

179. The method of claim 175, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

180. The method of claim 20, further comprising:

detecting, using the microprocessor, a second event based on the movement data and at least one of the user-defined operational parameters; and

storing, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

181. The method of claim 180, wherein said second event is a predetermined type of movement.

182. The method of claim 181, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

183. The method of claim 181, wherein the predetermined type of movement is movement exceeding a predefined speed.

184. The method of claim 181, wherein the predetermined type of movement is no movement for a predetermined amount of time.

185. The method of claim 181, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

* * * * *

# EXHIBIT C

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| IN RE: | Theodore L. Brann | § |
| SERIAL NO.: | 08/976,228 | § |
| FILED: | November 21, 1997 | § |
| FOR: | A TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY | § § § § § § |

GROUP NO.:     3713

EXAMINER:     Cheng, Joe H.

ATTY DKT:     13326/59157

RECEIVED

MAY 1 3 1999

Group 3700

BOX NON-FEE AMENDMENT
ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

## AMENDMENT & RESPONSE

In response to the Examiner's Office Action mailed February 4, 1999, applicant requests that the application be amended as follows.

In the Specification

Please amend the specification as follows:

1.      On page 16, line 19, delete "was".

In the Claims

Please delete claim 8.
Please amend the following claims as indicated (insert / [delete]):

2. (Amended) The device of claim 1 further comprising at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters to and from a computer.

CERTIFICATE OF EXPRESS MAILING (37 C.F.R. § 1.10)
EL382623201US
Express Mail Label Number
I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service as Express Mail Post Office to Addressee on the date shown below in an envelope with sufficient postage for and with Express Mail label number shown above, and is addressed to: Box Non-Fee Amendment, Assistant Commissioner for Patents, Washington, D.C. 20231.

CATHERINE A. BERGLUND

Date: May 4, 1999

Signature

1

Sub. B6>   14. (Amended) A system to aid in training and safety during physical activity, said system comprising

    a movement measuring device, said movement measuring device further comprising

        a movement sensor capable of measuring data associated with movement of said device and generating signals indicative of said movement;

        a power source;

        a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters;

        at least one user input connected to said microprocessor for controlling the operation of said device;

        a real-time clock connected to said microprocessor;

        memory for storing said movement data;

        at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and

        an output indicator connected to said microprocessor;

    a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and

    a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes.

## REMARKS

    The Examiner has objected to the declaration for failing to state whether the inventor is a sole or joint inventor. In this application, claims 1-30 are pending. The Examiner has rejected claims 2 and 14-20 under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter of the invention. The Examiner has also rejected claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29 under 35 U.S.C. 102(b) as being anticipated by Stark et al. The Examiner has rejected claims 8 and 18-20 under 35 U.S.C. 103(a) as being unpatentable over Stark. Claims 3, 22, 28 and 30 have been rejected as being unpatentable over Stark in view of Pratt. Claim 12 is rejected as being obvious in light of Stark and Plotke. Applicant respectfully disagrees with the Examiner as to the rejection of the claims and addresses the Examiner's rejections, in part, by amendment to the claims requested above and, in part, by the following discussion.

### Oath/Declaration

    The Examiner's objection concerning the defective declaration has been addressed by filing a new declaration in compliance with 37 CFR 1.67(a) identifying the application by application number and filing date. Although the previously filed declaration was entitled "Declaration, Power of Attorney, and Petition of Sole Inventor," the new declaration more clearly states that the named inventor is the sole inventor.

### Claim Rejections – 35 USC 112

    The Examiner's rejection of claims 2 and 14-20 has been duly noted. The Examiner expresses concern as to whether the "at least one port" refers to the "download device" described in the specification. This concern has been addressed by amending claims 2 and 14 to more explicitly refer to the input/output port (reference numeral 52 in Fig. 4) which is part of the movement measuring device 12



and to distinguish the port from the download device (reference numeral 14 in Fig. 1) that serves as an interface (i.e., docking station) between the device 12 and the computer 16.

## Claim Rejections – 35 USC 102

The Examiner has rejected claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29 under Section 102(b) as being anticipated by U.S. Pat. No. 5,052,375 issued to Stark et al. The Examiner states that Stark "broadly discloses the concept of the system and method for monitoring physical movement of the body part." The Examiner apparently misunderstands the applicant's invention. Stark describes an orthopedic limb immobilization device while applicant's invention is designed to measure an individual's free movement of limb or torso. In particular, Stark's invention is an orthopedic restraining device used to immobilize and rehabilitate injured human limbs by providing controlled resistance to movement of the limb. The device monitors the force exerted by the wearer via the injured limb through stress sensing means. And it is this sensed data which is monitored and recorded by the device. The only real movement measured by Stark's device is the relative angular position of the "distal end sections" of the device (col. 2, line 55-58) about an adjustable hinge. Stark does not describe a highly portable device used to measure torso or limb movement along multiple axes, including distance and speed of the movement, without any restraint to the movement as is taught by applicant's invention. Thus, Stark's disclosure does not anticipate any of the claims made by the applicant in the present invention.

## Claim Rejections – 35 USC 103

In order to support the rejection of claims under Section 103, the Examiner must identify something that suggests the various elements mentioned in the rejection be used together to achieve a useful purpose. See In re Fritch, 23 USPQ 2d 1780, 1983 (Fed. Cir. 1992), citing ACS Hosp. Systems, Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577 (Fed. Cir. 1984) ("Obviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching or suggestion supporting the combination. Under Section 103, teachings of references can be combined only if there is some suggestion or incentive to do so."); In re Fine, 837 F.2d 1071 (Fed. Cir. 1988) (The PTO has the burden under section 103 to establish a prima facie case of obviousness . . . ). Nothing in the references cited by the Examiner suggests that these elements be combined or integrated in the unique way they have been integrated in the claims of the present invention.

I.      The Examiner has rejected claims 8 and 18-20 under Section 103 as unpatentable over Stark. In particular, the rejection of claims 8 and 18-20 are based solely on Stark without combining it with any other reference. Therefore, the combination of elements must be obvious from Stark alone. Applicant has deleted claim 8. However, because Stark does not disclose or imply the use of any type of download device or docking station from which data contained in the "control means" may be downloaded to a computer or other device for processing, Stark does not suggest or teach the use of such a download device in any form. Thus, claims 18-20, which describe various physical means for achieving the transfer of data from applicant's device for remote data processing, are not obvious in light of Stark.

II.     The Examiner has rejected claims 3, 22, 28 and 30 under Section 103 as being unpatentable over Stark in view of Pratt. However, this rejection is ill-founded. Pratt, just as with Stark, discloses a device which is a "resisting apparatus" (col. 3, lines 8-9). This is in direct opposition to applicant's device which allows the wearer to move in any desired direction and with any desired speed for purposes of monitoring the wearer's movement. Thus, while both Stark and Pratt disclose devices used to restrain or resist the wearer's movement, applicant's device does not and in fact could not in order for it to be used for its intended purpose. The wearer of the applicant's device is not restrained in any way, and this is critical in order to monitor the wearer's natural motion for analysis, whether while performing physical labor or

3

athletic drills.  Furthermore, applicant's invention measures and records a wide variation of movement speeds whereas Pratt simply controls the device resistance in order to maintain constant speed throughout the movement (claim 6).  Thus, nothing in these two references integrate to form the unique and non-obvious aspects claimed in claims 3, 22, 28 and 30.

III.     The Examiner has rejected claim 12 under Section 103 as unpatentable over Stark in view of Plotke.  Because Stark describes an immobilization and restraining device that severely limits the wearer's movement and Plotke discloses a motion and force evaluation system for measuring physical movement, there is no suggestion to combine Stark with Plotke.  Thus, Stark teaches away from the tactile device disclosed in Plotke.

**Request for Allowance**

Applicant submits that:  all of the rejections and objections cited by the Examiner have been addressed and that, with the above-requested amendments, all of the pending claims of the present application recite patentable improvements.  Allowance and passage to issue of the present application is therefore respectfully requested.

RESPECTFULLY SUBMITTED,

Date: May 4, 1999
Registration No. 27,811
Registration No. 37,797

Jerry M. Keys
Michael Caywood
ATTORNEYS FOR APPLICANT
Locke Liddell & Sapp LLP
100 Congress Ave., Suite 300
Austin, Texas 78701
512/305-4724

13326:59157:AUSTIN:45752.1

4

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on December 17, 2021.

By: */s/ Arnold Shokouhi*
Arnold Shokouhi